**WESTINGHOUSE CREDIT CORPORATION, Plaintiff,**

v.

**STATE FURNITURE COMPANY OF WINSTON–SALEM, Inc.; State Furniture Company of Mount Airy, Inc.; State Furniture Company of Statesville, Inc.; State Furniture Company of Reidsville, Inc.; and State Furniture Company of North Wilkesboro, Inc., Defendants.**

**No. C–2–WS–66.**

United States District Court
M. D. North Carolina,
Winston-Salem Division.

July 17, 1967.

---

See also D.C., 298 F.Supp. 570.

Herbert S. Falk, Jr., Greensboro, N. C., for plaintiff.

Eugene H. Phillips, Winston-Salem, N. C., for defendants.

## MEMORANDUM DECISION

GORDON, District Judge.

The plaintiff, Westinghouse Credit Corporation, a Delaware Corporation maintaining principal offices in Pittsburgh, Pennsylvania, instituted this action on January 3, 1966, against the defendants, State Furniture Company, et al, North Carolina corporations each with principal offices in Winston-Salem, North Carolina, seeking a judgment for breach of contract.

The essential facts are undisputed. In May, 1962, plaintiff entered into an agreement (Recourse Agreement) to purchase certain of defendants' outstanding accounts receivable amounting to approximately $367,000.00, subject to recourse against the defendants upon default and demand.

Sometime prior to September 5, 1963, defendants became dissatisfied with the arrangement under the Recourse Agreement. At that time, when the existing limit of the defendants' liability under the Recourse Agreement was $39,300.00, a conference between the parties' managing officers was held which culminated in a settlement of the dispute. The essential provisions of the settlement agreement which was drafted by the defendants and accepted by the plaintiff were:

"(4) The State Furniture Companies will immediately pay over to Westinghouse the sums now due for such Bulk Account repurchases as they have been called on to make under the recourse provisions of the written contract, it being understood however that State's liabilities under said recourse provisions shall be fully discharged hereafter upon their repurchasing such Bulk Accounts in the total amount of $20,000, which limitation of liability shall include the sums now to be paid because of the repurchase requests that are now outstanding.

"(5) Except as modified hereby, the written contract between the parties, together with the amendment thereto, dated May 29, 1962, shall continue to remain in force and effect."

The salient portion of the Recourse Agreement referred to in Paragraph

(5) of the settlement agreement is as follows:

> "Each of the undersigned directly and unconditionally guarantees the payment when due of all amounts owing on all instruments assigned hereunder, and performance thereof by purchasers, and if any purchaser should be in default for more than ninety (90) days in payment of any installment of any such instrument or should breach any provision thereof, the undersigned agree jointly and severally that they will, upon demand, repurchase such defaulted or breached instrument * * *."

On or about September 8, 1964, plaintiff demanded that defendants repurchase certain accounts totaling $12,749.22 to fulfill their $20,000.00 liability. Defendant contended that only $2,502.95 remained on the original $20,000.00 liability under the settlement agreement and tendered payment in that amount.

Therein lies the dispute.

Defendants contend that paragraph (4) of the settlement agreement provides that defendants will be fully discharged from liability after repurchasing bulk accounts in the total amount of $20,000.00, and that all accounts thereafter purchased by the defendants will apply to the $20,000.00 limitation irrespective of any demand by the plaintiff under the provisions of the Recourse Agreement.

Conversely, plaintiff contends that Paragraph (5) of the settlement agreement requires that the demand provisions of the Recourse Agreement be construed with the settlement agreement, thereby requiring a repurchase demand from the plaintiff before accounts repurchased could be credited against the defendants' maximum liability of $20,000.00.

Thus the sole issue before this Court, as agreed by the parties at the final pretrial conference January 20, 1967, is:

> "Does the defendants' $20,000.00 liability limit under the settlement agreement apply to all accounts thereafter repurchased by defendants, or merely to those that plaintiff particularly requested be repurchased?"

■ The Court finds that the settlement agreement was not ambiguous and that Paragraph (5) thereof requires demand by the plaintiff before the accounts repurchased by the defendants could be credited to the $20,000.00 liability limit.

■ Even supposing the settlement agreement to be ambiguous, and the Court cannot so find, the plaintiff would still prevail. The settlement agreement was prepared by the defendants, and it is well settled that ambiguity will be inclined against the party who prepared the writing.[1] The purpose of the settlement agreement was to limit the liability of the defendant from the maximum of $39,000.00 under the Recourse Agreement to a minimum of $20,000.00. The settlement agreement provided that the repurchase of the $20,000.00 in bulk accounts would discharge the plaintiff's liabilities under the recourse provisions of the Recourse Agreement; defendants' liability under this recourse provision attached only after default and demand. If the defendants had desired to eliminate the demand provision, they could have done so explicitly in the settlement agreement and to insert Paragraph (5) in the settlement agreement was to reinforce the necessity of demand.

Counsel for the plaintiff will prepare and present to the Court within ten (10) days of the date of this Memorandum a proposed judgment, first presenting same to counsel for the plaintiff for approval as to form.

1. Coulter v. Capitol Finance Co., 266 N.C. 214, 146 S.E.2d 97, 102 (1966).