**WESTINGHOUSE CREDIT CORPORA-
TION, Plaintiff,**

v.

**STATE FURNITURE COMPANY OF
WINSTON–SALEM, Inc.; State Furni-
ture Company of Mount Airy, Inc.;
State Furniture Company of Statesville,
Inc.; State Furniture Company of
Reidsville, Inc.; and State Furniture
Company of North Wilkesboro, Inc., De-
fendants.**

**No. C–2–WS–66.**

United States District Court
M. D. North Carolina,
Winston-Salem Division.

Sept. 5, 1968.

## MEMORANDUM OPINION

GORDON, District Judge.

The plaintiff, Westinghouse Credit Corporation, a Delaware corporation maintaining principal offices in Pittsburgh, Pennsylvania, instituted this action on January 3, 1966, against the defendants, State Furniture Company, et al, North Carolina corporations, each with principal offices in Winston-Salem, North Carolina, seeking a judgment for breach of contract.

The case is properly presented here after the following procedural history. The defendants duly answered the complaint on January 24, 1966, and the parties dutifully accomplished the discovery process. On January 20, 1967, the parties filed an order on final pre-trial conference in which the parties stipulated the facts of the case quite extensively. On March 13, 1967, a hearing was held on the issue of the meaning of the "Settle-

ment Agreement" dated September 5, 1963. Evidence was put on before the Court relevant to that issue. On July 17, 1967, oral arguments were heard on this issue. On July 18, 1967, the Court delivered its decision on the issue of the meaning of the "Settlement Agreement" dated September 5, 1963, 298 F.Supp. 567. It was held that the "Settlement Agreement," when read in conjunction with the other contracts between the parties, required demand by the plaintiff before the accounts repurchased by the defendants could be credited against the $20,000.00 liability limit on the defendants set forth in the "Settlement Agreement."

This preliminary decision left the following issue to be decided: How many accounts, in what amounts, have been repurchased by the defendant after demand by the plaintiff; and thus how much of the $20,000.00 liability has been satisfied by the defendants? The plaintiff also submitted the following issue for decision: "Have the defendants collected (and do they still retain) sums of money on accounts which belonged to the plaintiff at the time of the collections, and, if so, in what total amounts?

The parties came regularly before the Court for trial without a jury on these issues. The Court ruled that the burden of proof on the issue of whether the accounts had been demanded was on the defendant. This opinion reaffirms that ruling on the basis of Johnson v. Johnson, 229 N.C. 541, 544–545, 50 S.E.2d 569, 572 (1948). The parties introduced their respective evidence in the form of previous stipulations in the pre-trial order, oral testimony taken at the previous hearing, and live testimony. The following Findings of Fact and Conclusions of Law comprise the Court's decision on the issues presented and the evidence introduced.

### Findings of Fact

1. The plaintiff is a Delaware corporation maintaining its principal office in Pittsburgh, Pennsylvania, and is qual-

ified to do business in the State of North Carolina.

2. The defendants are North Carolina corporations maintaining their principal office in Winston-Salem, North Carolina.

3. On or about May 24, 1962, each of the defendants entered into a written contract with the plaintiff entitled "Assignment and Guaranty Agreement," hereafter referred to as the "Recourse Agreement."

4. Pursuant to the terms of the "Recourse Agreement," the plaintiff, on or about May 24, 1962, purchased from the defendants accounts receivable totaling approximately $367,000.00.

5. Between May 24, 1962, and September 5, 1963, the defendants had become dissatisfied with the number and amounts of accounts receivable which they were being requested to repurchase under the terms of the "Recourse Agreement." The defendants also became dissatisfied during that period of time with the plaintiff's alleged failure to properly perform the various duties assumed by it under the terms of the "Recourse Agreement." The defendants made various claims against the plaintiff prior to September 5, 1963, on account of the alleged failure of the plaintiff to perform its duties as aforesaid.

6. On September 5, 1963, the plaintiff held for collection accounts receivable and security instruments having a total uncollected face value of approximately $39,213.38, which accounts receivable and security instruments had been purchased by the plaintiff from the defendants pursuant to the "Recourse Agreement" on or about May 24, 1962.

7. On September 5, 1963, after a conference among various officials of the plaintiff and the defendants, the defendants' attorney, Eugene H. Phillips, who was present at the conference, prepared an agreement hereinafter referred to as a "Settlement Agreement," and this "Settlement Agreement" was ultimately executed by all the parties to this action during the month of September, 1963.

8. The "Settlement Agreement" was intended to, and did, compromise and settle certain disputes which had arisen between the parties, including the contentions of the defendants that the plaintiff was not making diligent efforts to collect the accounts sold by the defendants to the plaintiff under the terms of the "Recourse Agreement," thereby causing the defendants to repurchase certain accounts receivable under the terms of the "Recourse Agreement."

9. Pursuant to the "Settlement Agreement" the defendants repurchased certain accounts totaling approximately $7,250.78, and, therefore, the defendants' maximum liability of $20,000.00 under the "Settlement Agreement" was reduced to $12,749.22.

10. After the execution of the "Settlement Agreement" on September 5, 1963, the defendants repurchased accounts from the plaintiff in the total amount of $17,623.11 ($17,055.70 plus $567.41). There is no evidence of any other repurchases made by the defendants after September 5, 1963.

11. The defendants have failed to carry their burden of proving that the plaintiff orally requested the defendants to purchase any accounts.

12. The evidence presented shows that accounts were repurchased by the defendants pursuant to demand by the plaintiff in the amount of $9,933.36.

13. The accounts totaling $877.43 which were demanded by the plaintiff at the request of the defendants because the customer wanted to "add on" to his account are included in the total accounts repurchased after demand by the plaintiff. No distinction will be made among the accounts demanded on the basis of the reason for the demand since the contracts between the parties make no distinction about the manner of the demand or the reasons behind the demand.

14. The same reasoning applies to the "Miscellaneous Accounts" enumerated in plaintiff's proposed finding of fact 25.

Demand to repurchase was made to the defendant, and the defendant repurchased. The reason for the demand will not be considered by the Court. The amount of $628.04 has been, therefore, credited against defendants' total liability.

15. The amounts presented in plaintiff's proposed findings of fact numbered 26–30 will not be credited against defendants' liability since no demand therefor was made to the defendant by the plaintiff.

16. The defendants have collected, and failed to remit to the plaintiff (defendants' answers to plaintiff's interrogatories 2(e) and 2(f) the total sum of $1,672.35 from accounts which still belong to the plaintiff.

17. The plaintiff has failed to prove ownership of the sum of $78.45 purportedly held in the Northwestern Bank at Statesville, North Carolina.

### Conclusions of Law

■ 1. The defendants' maximum liability of $20,000.00 as set by the "Settlement Agreement," could be reduced only by their repurchasing accounts on which the plaintiff had made demand. (The Court so held on the "first issue" of this case, tried in March, 1967.)

■ 2. The "Settlement Agreement" of September 5, 1963, settled all existing disputes between the parties, including the defendants' contention that the plaintiff was not making diligent collection efforts on the bulk accounts. Any evidence by the defendants that the plaintiff had not made diligent collection efforts prior to September 5, 1963, has no effect on the issues to be decided in this action.

3. The plaintiff was diligent in making collections on the bulk accounts after September 5, 1963.

4. Any "blanket demand," or demand of all accounts in default by more than ninety days, made before the execution of the "Settlement Agreement" was rescinded by the "Settlement Agreement" and is not pertinent to the issues to be decided in this action. The total amount of "outstanding repurchase requests" as of September 5, 1963, was $7,250.78.

■ 5. The defendants have the burden of proving that demand was made on each account which they repurchased.

6. The defendants have made payments to the plaintiff since September 5, 1963, in the total sum of $17,623.11. The burden of proving that these payments were made in accordance with the contract between the parties rests upon the defendants.

7. The defendants have failed to prove that the plaintiff made any oral demands for repurchase.

■ ■ 8. Therefore, the defendants have received credit for $9,933.36 against their total liability of $20,000.00. Thus, the defendants continue to owe $10,066.64 of this liability of $20,000.00. Add to this the sum of $1,672.35 collected by the defendants but not remitted and you have the gross amount owing before interest is added, or $11,738.99.

9. There is now due and owing, from the defendants to the plaintiff the sum of $11,738.99 with interest from the date of institution of this suit.

10. There is no merit in the estoppel argument put forward in the last pages of defendants' proposed conclusions of law.

Counsel for the plaintiff will accordingly prepare and submit to the Court a proposed judgment, first submitting same to counsel for the defendants for approval as to form.